Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9100 Wilshire Blvd. #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC SABATINI, | Case No. |
| Plaintiff, | |
| vs. | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| GREENLANE HOLDINGS, INC., AARON LOCASCIO, ADAM SCHOENFELD, NEIL CLOSNER, RICHARD TANEY, and JEFF UTTZ, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Eric Sabatini ("Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE OF THE ACTION

- 1 -

1.     This is an action brought by Plaintiff against Greenlane Holdings, Inc. ("Greenlane" or the "Company") and the members of Greenlane's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Greenlane will acquire KushCo Holdings, Inc. ("KushCo") through Greenlane's subsidiaries Merger Sub Gotham 1, LLC ("Merger Sub 1") and Merger Sub Gotham 2, LLC ("Merger Sub 2") (the "Proposed Transaction").

2.     On March 31, 2021, Greenlane and KushCo issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated March 31, 2021 (the "Merger Agreement").   Under the terms of the Merger Agreement, KushCo shareholders will receive approximately 0.2546 shares of Greenlane Class A common stock for each share of KushCo common stock they own, subject to adjustment (the "Merger Consideration").   Following the consummation of the Proposed Transaction, Greenlane's stockholders will own approximately 50.1% of the combined company's outstanding shares, and KushCo's stockholders will own approximately 49.9% of the combined company's outstanding shares.

3.     On July 2, 2021, Greenlane filed a Prospectus on Form 424B3 (the "Prospectus")  with the SEC.  The Prospectus, which recommends that Greenlane stockholders vote in favor of the Proposed Transaction, omits or misrepresents

- 2 -

material information concerning, among other things: (i) the Company's and KushCo's financial projections and the financial analyses supporting the fairness opinion provided by the special committee of the Board's ("Special Committee") financial advisor, Canaccord Genuity Corp. ("Canaccord"); (ii) potential conflicts of interest faced by Canaccord; and (iii) the background of the Proposed Transaction. Defendants authorized the issuance of the false and misleading Prospectus in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.     In short, unless remedied, Greenlane's public stockholders will be irreparably harmed because the Prospectus' material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction.   Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6.     The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company maintains and operates a flagship retail location in this District; and (ii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Greenlane.

9.      Defendant Greenlane is a Delaware corporation, with its principal executive offices located at 1095 Broken Sound Parkway, Suite 300, Boca Raton, Florida 33487 and a flagship relation location in Malibu, California.  Greenlane is one of the largest global sellers of premium cannabis accessories and liquid nicotine products in the world.  It is a holding company that was formed in order to carry on the business of Greenlane Holdings, LLC.  Greenlane's shares trade on the Nasdaq Global Select Market under the ticker symbol "GNLN."

10.     Defendant Aaron LoCascio ("LoCascio") is co-founder of the Company, has been Chief Executive Officer ("CEO"), Chairman of the Board, and a director since May 2018, and has been CEO of Greenlane Holdings, LLC since its inception in 2007.

- 4 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

11.     Defendant Adam Schoenfeld ("Schoenfeld") is co-founder of the Company, has been Chief Strategy Officer and a director since May 2018, and has been Managing Member of Greenlane Holdings, LLC since its inception in 2007.

12.     Defendant Neil Closner ("Closner") has been a director of the Company since its April 2019 initial public offering.

13.     Defendant Richard Taney ("Taney") has been a director of the Company since its April 2019 initial public offering.

14.     Defendant Jeff Uttz ("Uttz") has been a director of the Company since its April 2019 initial public offering.

15.     Defendants identified in paragraphs 10-14 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

16.     KushCo is a Nevada corporation with its principal executive offices located at 6261 Katella Avenue, Suite 250, Cypress, California 90630. It is a premier provider of ancillary products and services to the legal cannabis and cannabidiol ("CBD") industries. KushCo's subsidiaries and brands provide product quality, exceptional customer service, compliance knowledge and a local presence in serving its diverse customer base, which consists of leading multi-state-operators ("MSOs"), licensed producers ("LPs"), and brands. Founded in 2010, KushCo has now sold more than 1 billion units to growers, brand owners, processors and producers across North America, South America, and Europe, specializing in child-resistant compatible and

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

fully customizable packaging, exclusive vape hardware and technology, and complementary solvents and natural products.  KushCo's shares trade on the OTCQX under the ticker symbol "KSHB."

17.    Merger Sub 1 is a wholly owned subsidiary of Greenlane.

18.    Merger Sub 2 is a wholly owned subsidiary of Greenlane.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

19.    Greenlane is a global house of brands and one of the largest sellers of premium cannabis accessories, child-resistant packaging, and specialty vaporization products to smoke shops, dispensaries, and specialty retail stores, as well as direct to consumer through its online e-commerce platform, vapor.com.  Founded in 2005, Greenlane serves more than 8,000 retail locations and has over 250 employees with operations in United States, Canada, and Europe.  With a strong global footprint, Greenlane has been the partner of choice for many of the industry's leading brands, who chose to leverage its strong distribution platform, unparalleled customer service, and highly efficient operations and logistics to accelerate their growth.  Greenlane's curated portfolio of owned brands includes EYCE, packaging innovator Pollen Gear, VIBES rolling papers, Marley Natural Accessories, K.Haring Glass Collection, Aerospaced grinders, and Higher Standards which offers both an upscale product line as well as an innovative retail experience with flagship stores located in Chelsea Market, New York and Malibu, California.  The Company also owns and operates

- 6 -

several industry-leading e-commerce platforms, including Vapor.com, Higherstandards.com, Aerospaced.com, Canada.vapor.com and Vaposhop.com, among others, offering consumers a convenient and flexible shopping solution.

20.    On May 18, 2021, Greenlane announced its first quarter ("Q1") 2021 financial results. Greenlane brands registered back-to-back quarterly sales records, growing 9.4% from the fourth quarter of 2020 to a now record of $8.5 million for Q1 2021, corresponding to a 18.4% growth over the $7.2 million sales for Q1 2020. Q1 2021 core revenue (defined as non-nicotine revenue) grew 11.6% to $32.3 million, compared to $28.9 million in Q1 2020. Total revenue increased 0.4% to $34.0 million for Q1 2021, compared to $33.9 million for Q1 2020. Gross profit and gross margin were flat at $7.3 million and 21.5% respectively, excluding for the impacts of damaged and obsolete inventory, gross margin would improve to 24.1%, up 260 basis points. Reflecting on the Company's results, defendant LoCascio stated:

Our first quarter 2021 results demonstrate our continued forward momentum on the heels of a successful 2020. This quarter saw significant progress on the execution of one of our key growth strategies, with the acquisition of Eyce, further adding to our portfolio of premium owned brands and the announcement of our impending transformative merger with KushCo. During the quarter we also saw further proof our strategy to focus on growing our portfolio of owned brands is delivering significant results as we transition away from lower-margin revenue categories, with

- 7 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

our Greenlane Brands accounting for a quarter of our revenue in the first quarter of 2021.  The continued improvement in revenue mix backed by our robust pipeline of potential acquisitions and continued organic growth, combined with our pending merger with KushCo we believe will strongly position us as the leader in the cannabis ancillary space as we drive further revenue growth and profitability improvements in 2021, and continue to build value for both shareholders and customers.

**The Proposed Transaction**

21.     On March 31, 2021, Greenlane and KushCo issued a joint press release announcing the Proposed Transaction.  The press release states, in relevant part:

BOCA RATON, Fla. and CYPRESS, Calif., March 31, 2021 -- Greenlane Holdings, Inc. ("Greenlane") (NASDAQ: GNLN) and KushCo Holdings, Inc. (''KushCo'') (OTCQX: KSHB) today announced that they have entered into a definitive merger agreement (the "Merger Agreement"), pursuant to which KushCo will become a wholly owned subsidiary of Greenlane (the "Transaction").

**Proposed Transaction**

Under the terms of the Merger Agreement, KushCo's stockholders will receive approximately 0.2546 shares of Greenlane Class A common stock for each share of KushCo common stock (the "Base Exchange Ratio"),

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

subject to adjustment as described below. The Base Exchange Ratio is expected to result in KushCo stockholders owning approximately 49.9% of the combined company's common stock and Greenlane stockholders owning approximately 50.1% of the combined company's common stock. The Base Exchange Ratio represents a 6.3% premium to KushCo's 20-day volume weighted average closing price ending on March 30, 2021.

The Merger Agreement permits Greenlane to continue to pursue opportunistic and strategic priorities prior to the closing of the Transaction, including engaging in certain contemplated acquisitions and capital raising transactions. If Greenlane issues additional securities prior to the closing of the Transaction in connection with any acquisitions or capital raising transactions, the Exchange Ratio will be adjusted such that Greenlane's existing stockholders maintain an aggregate interest of at least 50.1%, and not more than 51.9%, in the combined company.

Existing Greenlane stockholders will continue to hold their existing shares of Greenlane common stock; however, in connection with the Transaction, shares of Greenlane Class C common stock will be converted into shares of Greenlane Class B common stock on a 3-to-1 basis. Thereafter, there will be no shares of Greenlane Class C common stock

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

authorized or outstanding, which will have the effect of retiring the enhanced voting rights of Greenlane's majority stockholder.

The Transaction is intended to be tax free to KushCo, Greenlane and their respective shareholders for United States federal income tax purposes.

The Transaction has been unanimously approved by the boards of directors for both Greenlane and KushCo, and a special independent committee consisting entirely of Greenlane's independent and disinterested directors (the "Special Committee"), which was appointed by the Greenlane board of directors. The boards of directors of Greenlane and KushCo have unanimously recommended that stockholders approve the Transaction.

**Strategic Rationale and Financial Benefits**

- **Establishes the leading ancillary cannabis company delivering more value to customers across the supply chain**: The combined company will serve a premier group of customers, which includes many of the leading multi-state-operators and licensed producers, the majority of the top smoke shops in the United States, and millions of consumers.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

- **Optimized platform with significant potential synergies**: The Transaction is expected to generate approximately $15 million to 20 million of annual run-rate cost synergies within 24 months from the closing of the Transaction. These synergies are expected to result from the economies of scale that will be realized following the Transaction, an optimized nationwide distribution network, and reduced operating expenses.

- **Strengthens best-in-class proprietary owned brands and exclusive third-party brand offerings**: As the leading supplier of premier consumer brands and products, the combined company will have a diversified and highly complementary customer product offering, including: consumption devices, vaporizers and accessories; supplies and child-resistant packaging; papers and wraps; and complementary solvents and natural products. In addition, the combined company will offer curated proprietary owned brands, including packaging innovator Pollen Gear™, VIBES™ rolling papers, Marley Natural™ Accessories; K.Haring Glass Collection, Aerospaced grinders, Eyce specialty silicone smoking products, and Higher Standards, which offers both an upscale product line as well as an innovative retail experience with flagship stores located in Chelsea Market, New York and Malibu,

- 11 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

California. The combined company will also have third-party brand partnerships with a sizable portion of the industry's leading consumer brands. The combined company's product and service offerings are expected to deliver more value and greater choice to customers around the world.

- **Potential for robust organic growth through cross-selling opportunities**: The combined company will have the wide-ranging breadth of products and services needed to support the entire global cannabis industry. Greenlane's and KushCo's highly diverse complementary customer bases create strong opportunities for organic growth and are expected to deliver significant customer value through the introduction of Greenlane's owned brand products and exclusive third-party brands to KushCo customers, including top multi-state operators and licensed producers. Additionally, the C-CELL suite of products, currently sold exclusively by KushCo and other distributors in the United States, will become available to Greenlane's large B2B and B2C customer base.

- **Unique ability to drive industry innovation and premier product design and development**: As pioneers in the industry, both companies have established successful track records of

- 12 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

furthering product innovation and partnering with trailblazing brands through all stages of the product lifecycle. With over 200 articles of Intellectual Property, the combined company will cultivate a strong innovation pipeline across a broad category of product offerings and will be supported by an industry-leading and experienced product development and design team. As the industry evolves, the combined company will continue to leverage the deep relationships both companies have collectively developed with customers to enhance value for them as they grow, and ultimately provide the robust and innovative product lines their consumers are seeking.

- **Enhanced financial position and capital markets profile**: The combined company is expected to have pro forma revenue of over $250 million for the year ended December 31, 2020, and a pro forma market capitalization in excess of $350 million based on the respective share prices of Greenlane and KushCo as of market close on March 30, 2021. Following completion of the Transaction, the combined company is expected to generate pro forma revenue of between $310 million and $330 million for the year ended December 31, 2021 and will have a strong platform for accelerated organic growth that should be well-positioned to capitalize on

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

attractive market opportunities as the industry continues to grow and evolve.

- **Experienced industry leaders**: The Transaction will bring together two of the pioneering cannabis ancillary product and services companies, with a combined 25 plus years of operating history. The expected post-Transaction management team has a combined several decades of proven growth strategy execution as well as significant CPG tenure to establish one of the most experienced teams in the ancillary cannabis industry. With this industry expertise, the management team intends to focus on driving stockholder value by executing on profitable growth opportunities and realizing the significant potential cost synergies.

Upon completion of the Transaction, KushCo's Co-Founder, current Chairman and Chief Executive Officer, Nick Kovacevich, will lead the combined company as Chief Executive Officer, and an Independent Chairman of the Board will be appointed at a later date. Greenlane's Bill Mote will serve as Chief Financial Officer, with Greenlane Co-founder Aaron LoCascio serving as President and Greenlane Co-founder Adam Schoenfeld serving as Chief Strategy Officer. The board of directors of the combined company will consist of seven members, four of whom are

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

current Greenlane directors, including Aaron LoCascio, and Adam Schoenfeld, three of whom are current KushCo directors, including Nick Kovacevich. Greenlane and KushCo are confident that the leadership team and proposed board of directors of the combined company will provide a strong foundation for the combined company to accelerate growth and profitability. Additional senior leadership positions at the combined company will be named at a later date. The combined company will be headquartered in Boca Raton, Florida with a significant footprint in Southern California.

**Management Commentary**

"This transformative transaction is expected to create a broad and complementary platform that we expect to deliver substantial synergies at an important inflection point in the cannabis industry," said Aaron LoCascio, Chief Executive Officer and Co-Founder of Greenlane. "As an industry leader, the combined company will be well positioned to grow profitability and maximize value for all stockholders while also providing enhanced product offerings and expanded ancillary services to our valued customer bases. We are thrilled to be working with the talented and experienced KushCo team, and together we will continue to drive innovation and excellence in the space. Since Greenlane's founding in

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

2005, we have been at the forefront of the cannabis industry, and today we take the next step in our continued evolution."

"We're excited to create a leading, innovative supplier of cannabis ancillary products serving the most valuable segments of the supply chain," said Nick Kovacevich, KushCo's Co-founder, Chairman, and Chief Executive Officer. "For more than 10 years, KushCo has proudly pioneered this industry, creating substantial value for our customers, employees, partners, and stockholders. Now, we have reached a critical time in our industry where the leading operators are increasingly looking to partner with companies in the ancillary space who can reliably support their rapid expansion for years to come. We greatly admire the product portfolio that the Greenlane team has built, and we are excited to work with them to cross-sell to our complementary customer bases and execute on the attractive growth opportunities ahead."

**Additional Transaction Details**

The completion of the Transaction is subject to applicable regulatory approvals, including by Nasdaq, in addition to certain customary closing conditions, as well as approval by holders of a majority of the shares held by the existing Greenlane stockholders, other than Jacoby & Co. LLC and

- 16 -

its affiliates and the chief executive officer, chief strategy officer, chief financial officer, chief operating officer and general counsel of Greenlane, at a special meeting of stockholders expected to take place in the late second quarter or early third quarter of 2021. The Transaction is also subject to approval by a majority of KushCo shareholders.

The majority stockholder of Greenlane, which is an affiliate of two directors of Greenlane, has entered into a support agreement with Greenlane and KushCo, pursuant to which it has agreed to support and vote 100% of its voting power in favor of certain actions required to consummate the Transaction.

Certain directors and stockholders of KushCo, which collectively own approximately 12.5% of the shares of KushCo's common stock, have entered into support agreements with Greenlane, pursuant to which they have agreed to support and vote in favor of the Transaction.

Management of Greenlane and KushCo expects the Transaction to close in the late second quarter or early third quarter of 2021, subject to the satisfaction or waiver of all conditions in the agreement, including the receipt of all necessary approvals.

**Advisors**

- 17 -

Canaccord Genuity Corp. is acting as financial advisor to the Special Committee of Greenlane's board of directors. Potter Anderson & Corroon LLP is acting as legal counsel to the Special Committee. Cowen is acting as financial advisor to Greenlane, and Morrison & Foerster LLP is acting as its legal counsel. Jefferies LLC is acting as exclusive financial advisor to KushCo and Reed Smith LLP is acting as its legal counsel.

## Insiders' Interests in the Proposed Transaction

22.    Greenlane insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Greenlane.

23.    Notably, certain Greenlane insiders have secured positions for themselves with the surviving corporation following the merger.  For example, under the terms of the Merger Agreement, defendants LoCascio, Schoenfeld, Taney, and Uttz will be appointed to serve on the board of the combined company following completion of the merger.

24.    Moreover, Company insiders stand to reap substantial financial benefits for securing the deal with KushCo.  Under the terms of the Merger Agreement, all outstanding Company options and restricted stock unit awards, excluding those held

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

by non-employee directors, will vest and convert into the right to receive the Merger Consideration. The following table sets forth the value of options and restricted stock held by Company insiders:

| Name | Greenlane Options | | Greenlane Restricted Stock | | Total Value of Accelerated Awards |
| --- | --- | --- | --- | --- | --- |
| | Options | Value[1] | Shares | Value[2] | |
| Aaron LoCascio | 144,979 | $514,367 | 30,263 | $172,802 | $687,189 |
| *Chief Executive Officer* | | | | | |
| Adam Schoenfeld | 144,979 | $514,367 | 30,263 | $172,802 | $687,189 |
| *Chief Strategy Officer* | | | | | |
| William Mote | 90,336 | $284,999 | 20,456 | $116,804 | $569,998 |
| *Chief Financial Officer* | | | | | |

## The Prospectus Contains Material Misstatements or Omissions

25. Defendants filed a materially incomplete and misleading Prospectus with the SEC and disseminated it to Greenlane's stockholders. The Prospectus misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

26. Specifically, as set forth below, the Prospectus fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's and KushCo's financial projections and the financial analyses supporting the fairness opinion provided by the Special Committee's financial advisor, Canaccord; (ii) potential conflicts of interest faced by Company insiders; and (iii) the background of the Proposed Transaction.

*Material Omissions Concerning the Company's and KushCo's Financial Projections and Canaccord's Financial Analyses*

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

27.     The Prospectus omits material information regarding the Company's and Kushco's financial projections.

28.     For example, the Prospectus fails to disclose the line items underlying Adjusted EBITDA, Unlevered Net Income and Unlevered Free Cash Flow over the projection period for the Greenlane projections.  Similarly, the Prospectus fails to disclose the line items underlying Adjusted EBITDA, Net Operating Profit After Tax and Unlevered Free Cash Flow over the projection period for the KushCo projections.

29.     The Prospectus also omits material information regarding Canaccord's financial analyses.

30.     The Prospectus describes Canaccord's fairness opinion and the various valuation analyses it performed in support of its opinion.  However, the description of Canaccord's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Greenlane's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Canaccord's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

31.     With respect to Canaccord's *Discounted Cash Flow Analysis* of Greenlane, the Prospectus fails to disclose: (i) the projection metric to which Canaccord applied terminal EBITDA multiples to derive the terminal value for Greenlane and quantification thereof; (ii) quantification of the terminal value for Greenlane; (iii)

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

quantification of the inputs and assumptions underlying the discount rates ranging from 14.0% to 16.0%; and (iv) Greenlane's outstanding shares.

32.    With respect to Canaccord's *Discounted Cash Flow Analysis* of KushCo, the Prospectus fails to disclose: (i) the projection metric to which Canaccord applied terminal EBITDA multiples to derive the terminal value for Kushco and quantification thereof; (ii) quantification of the terminal value for KushCo; (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 14.0% to 16.0%; and (iv) KushCo's outstanding shares.

33.    Without such undisclosed information, Greenlane stockholders cannot evaluate for themselves whether the financial analyses performed by Canaccord were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Canaccord's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

34.    The omission of this material information renders the statements in the "Certain Unaudited Prospective Financial Information" and "Opinion of the Greenlane Special Committee's Financial Advisor" sections of the Prospectus false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Canaccord's Potential Conflicts of Interest*

- 21 -

35.     The Prospectus fails to disclose material information concerning potential conflicts of interest faced by the Company's financial advisor, Canaccord.

36.     The Prospectus fails to quantify the amount of compensation that Canaccord has received for all past services provided to Greenlane and KushCo, including (i) acting as joint-lead bookrunner in Greenlane's initial public offering of Class A common stock, which closed on April 23, 2019; and (ii) acting as sole placement agent in KushCo's private placement of a senior unsecured note to an institutional investor, which closed on April 30, 2019.

37.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

38.     The omission of this information renders the statements in the "Opinion of the Greenlane Special Committee's Financial Advisor" section of the Prospectus false and/or materially misleading in contravention of the Exchange Act.

39.     The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Prospectus.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other Greenlane stockholders will be unable to make an informed decision whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

*Material Omissions Concerning the Background of the Proposed Transaction*

40.     The Prospectus fails to disclose material information concerning the background process leading to the Proposed Transaction, including whether the parties referred to in the Prospectus as "Company A," "Company B," "Company C," and "Company D," or any other potential bidders, entered into non-disclosure agreements containing "don't-ask, don't-waive" ("DADW") standstill provisions that are still in effect and currently precluding these parties from making a topping bid for the Company.

41.     The failure to disclose the existence of DADW provisions creates the false impression that a potential bidder who entered into a confidentiality agreement could make a superior proposal for the Company.  If the potential acquirer's non-disclosure agreement contains a DADW provision, then that potential bidder can only make a superior proposal by (a) breaching the confidentiality agreement—since in order to make the superior proposal, it would have to ask for a waiver, either directly or indirectly; or by (b) being released from the agreement, which if action has been done, is omitted from the Prospectus.

42.     Any reasonable Greenlane stockholder would deem the fact that a likely topping bidder for the Company may be precluded from making a topping bid for the Company to significantly alter the total mix of information.

43.   The omission of this information renders the statements in the "Background of the Mergers" section of the Prospectus false and/or materially misleading in contravention of the Exchange Act.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

44.   Plaintiff repeats all previous allegations as if set forth in full.

45.   During the relevant period, defendants disseminated the false and misleading Prospectus specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

46.   By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Prospectus.   The Prospectus was prepared, reviewed, and/or disseminated by the defendants.   It misrepresented and/or omitted material facts, including material information about Greenlane's and KushCo's financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Canaccord, and Canaccord's potential conflicts of interest.   The defendants were at

least negligent in filing the Prospectus with these materially false and misleading statements.

47.     The omissions and false and misleading statements in the Prospectus are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

48.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

49.     Because of the false and misleading statements in the Prospectus, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

50.     Plaintiff repeats all previous allegations as if set forth in full.

51.     The Individual Defendants acted as controlling persons of Greenlane within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Greenlane, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Prospectus filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

52.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Prospectus and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Prospectus at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Prospectus.

54.     In addition, as the Prospectus sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Prospectus purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

55.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Greenlane's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Greenlane, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Greenlane stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

- 27 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: August 13, 2021

**WEISSLAW LLP**
Joel E. Elkins

By: */s/ Joel E. Elkins*

Joel E. Elkins
9100 Wilshire Blvd. #725 E.
Beverly Hills, CA 90210
Telephone:  310/208-2800
Facsimile:   310/209-2348
         -and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY  10036
Telephone: 212/682-3025
Facsimile:  212/682-3010

*Attorneys for Plaintiff*

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS